## LIABILITY OF CONSIGNOR FOR DEMURRAGE CHARGES ON REFUSAL OF CONSIGNEE TO ACCEPT SHIPMENT.

Court of Appeals for Hamilton County.

MOORES LIME CO. v. NORFOLK & WESTERN RAILWAY CO.

Decided, February 28, 1916.

*Railways—Shipment in Carload Lots Refused by Consignee—Consignor Liable for Demurrage Charges.*

Where a shipment upon arrival is refused by the consignee and the shipper is notified by the carrier of such refusal and upon request declines to give the carrier any instructions as to disposition, the carrier then becomes a mere custodian or bailee of the goods to whom the shipper is liable for all charges thereafter accruing.

*Charles M. Leslie,* for plaintiff in error.
*Hollister & Hollister,* contra.

JONES (E. H.), J.

Three carloads of crushed stone were shipped prepaid from the Moores Lime Company at Springfield, Ohio, via the C., C. C. & St. L. and N. & W. railroads to R. Wilhelmy at Bond Hill, Ohio, one car on each of the following dates: September 28, September 29 and October 10, 1910.

There is a written stipulation as to facts in this case which recites:

"The consignee refused to accept and unload said cars. That after said refusal by said consignee to accept or unload said car, notice was given defendant, and defendant was requested to give disposition of same, which defendant refused to do for the assigned reason that it was not the owner of the contents of said cars and had no right to dispose of same."

This action below was brought by the railway company to recover demurrage charges which accrued after these refusals by the consignee and consignor—the refusal to accept the stone by the former and the refusal to give disposition or exercise ownership by the latter. There is no question raised as to any

fact material to the determination of this case. The question presented is one of law, viz: Under these conditions is the consignor obliged to pay the demurrage charges accruing after the shipment is rejected by the consignee?

Certain principles discussed in argument as having a bearing upon this question are well recognized. For example, it must be conceded that the title to the crushed stone from the time it was loaded at Springfield until it arrived at Bond Hill was in Wilhelmy, the consignee. It would be so considered in the determination of any question arising while the stone was in *transitu.* But when the consignee refused to take the stone there was a changed situation. There was no contract between the carrier and Wilhelmy. The carrier had made a written contract with the lime company to carry and deliver the stone at a certain place, to a person named in the written contract. When the person so named as consignee refused to receive the consignment it became the duty of the carrier to ask for directions or disposition from its employer, who was the only person in the transaction with whom it sustained a contractual relation or had any privity of contract.

The carrier could not be drawn into or be made to suffer by a dispute, of whatever nature, between the vendor and vendee simply because the goods sold were on its cars and in its possession. It had performed its duty in safely delivering the cars and placing same in the yard at Bond Hill.

When the shipment was refused at its destination a new and different relation arose between the shipper and the carrier. The latter became the custodian or bailee of the stone, with duties and responsibilities resting upon it similar to those of a warehouseman. The position taken by the shipper, as indicated in the part of the statement of facts above quoted, is and was untenable. It should have promptly given disposition of cars, upon request from the carrier so to do. The railway company was then justified in looking to it as the owner of the stone, and under the eighth condition of the bill of lading it was liable as "owner" for all charges accruing thereafter.

Judgment affirmed.

Jones (Oliver B.), J., and Gorman, J., concur.